IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| United States of America, ) | |
| ) | |
| Plaintiff, ) | **ORDER ON ADMISSIBILITY OF** |
| ) | **COCONSPIRATOR STATEMENTS** |
| vs. ) | |
| ) | Case No. 3:17-cr-206 |
| Marie Um, ) | |
| ) | |
| Defendant. ) | |

A superseding indictment charges Defendant Marie Um with conspiracy to possess with intent to distribute and distribute fentanyl and fentanyl analogues, conspiracy to import fentanyl and fentanyl analogues into the United States, and money laundering conspiracy. Doc. No. 48. During trial, the Court conditionally admitted hearsay statements made by Um's alleged coconspirators. This order addresses the admissibility of those hearsay statements.

An out-of-court statement offered for its truth is not hearsay if made by a "party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). For a coconspirator statement to be admissible, the Government must prove by a preponderance of the evidence that: (1) a conspiracy existed; (2) the defendant and the declarant were members of the conspiracy; and (3) the declaration was made during the course and in furtherance of the conspiracy. United States v. Bell, 573 F.2d 1040, 1043 (8th Cir. 1978). In determining whether a conspiracy existed, a court may consider the co-conspirator statement itself. See Bourjaily v. United States, 483 U.S. 171, 181 (1987). Even so, "[i]t is generally agreed that 'an otherwise inadmissible hearsay statement cannot provide the sole evidentiary support for its own admissibility.'" United States v. Garbett, 867 F.2d 1132, 1134 (8th Cir. 1989) (quoting Bourjaily, 483 U.S. at 184 (Stevens, J., concurring)).

As to the first <u>Bell</u> finding, the Government has proven by a preponderance that a conspiracy existed. A conspiracy offense requires three elements: (1) two or more persons conspired to commit an unlawful act; (2) the defendant knew the purpose of the conspiracy; and (3) the defendant intentionally joined the conspiracy. <u>United States v. Mallett</u>, 751 F.3d 907, 915 (8th Cir. 2014). The testimony at trial was that Jason Berry and later Daniel Vivas Ceron repeatedly obtained multiple kilogram quantities of fentanyl and fentanyl analogues from Chinese suppliers, including Jian Zhang and Prestige (whose real identity remains unknown to this day). While imprisoned at the Drummond Institution in Quebec, Canada, Berry and Ceron then arranged to ship the drugs (as either pills or powder) into the United States, and elsewhere, for resale. Berry and Ceron directed Xuan Nguyen and Marie Um, among others, to ship the drugs. To that end, Marie Um had Vannek Um and Linda Van mail packages containing these drugs to customers in the United States and elsewhere. Ceron also arranged for drugs to be shipped to customers in the United States directly from China. Some United States customers who received these drugs included Brandon Hubbard (Oregon), Ronnie Helms (Georgia), Darius Ghahary (New Jersey), Pinto (Rhode Island), and Anthony Gomes (Rhode Island/Florida) (delete?). Hubbard distributed the drugs to others, including Channing Lacy (in Oregon) and Ryan Jensen (in North Dakota). Before the drugs were shipped, the customers had to pay for the drugs. Marie Um retrieved some of these payments, and had Vannek Um and Linda Van retrieve those payments as well, which were sent from Canada and the United States via Western Union. Taken together, there is ample evidence that two or more people conspired to commit the unlawful acts charged against Marie Um.

The Government has also demonstrated by a preponderance that Um knew the purpose of the conspiracies and intentionally joined. Based on the testimony at trial, Ceron told Xuan Nguyen

to give fentanyl or fentanyl analogues to Marie Um (as powder and pills), which he did several times. Marie Um also sent Ceron pictures of drugs that were received from China. Ceron told Marie Um that these drugs (from Nguyen and China) were pharmaceuticals and to take safety precautions, although at some point Marie Um still got sick from the drugs. Once payment was confirmed, Ceron would direct Marie Um to send the related packages of drugs and give her the address to which they should be sent. Marie Um then gave Vannek Um and Linda Van these packages to mail. Marie Um would send Ceron weekly summaries containing the number of pills, types of pills, and to whom the pills were sent. In 2015, while in a vehicle with Marie Um, Linda Van mailed a package to Ultimate Fitness in Rhode Island. This package was later obtained by law enforcement and found to contain pills containing fentanyl and a fentanyl analogue. Later, during a search of Marie Um's apartment, law enforcement observed her attempting to burn receipts. One receipt that law enforcement did obtain was for a package sent to the same Ultimate Fitness in Rhode Island.

As to the money, Ceron asked Marie Um if someone could help her collect the payments. To that end, Marie Um worked with Vannek Um and Linda Van, who collected payments from customers sent via Western Union. Marie Um sent pictures of these Western Union receipts to Ceron. And Marie U also sent Ceron pictures of a handwritten ledger, which accounted for money received from the drug sales and the expenses to continue the sale of drugs.

In these circumstances, the evidence establishes by a preponderance that a conspiracy existed, and Marie Um knowingly and intentionally participated.  These determinations rest on both the coconspirator statements themselves and independent evidence admitted at trial.

As to the second <u>Bell</u> finding, a preponderance of the evidence demonstrates that Marie Um and the declarants were members of the conspiracy.  Based on the independent evidence

presented at trial, the members of the conspiracy included but were not limited to Marie Um, Daniel Vivas Ceron, Jason Berry, Xuan Nguyen, Vannek Um, Linda Van, Prestige, Jian Zhang, Brandon Hubbard, Ryan Jensen, Anthony Gomes, Elizabeth Ton, Danny Gamboa, and Steven Pinto.

Finally, the third Bell finding requires that the declaration was made during the course of and in furtherance of the conspiracy. Although Marie Um has a standing objection to the admissibility of statements admitted pursuant to Bell, she did not specifically object to any particular statement. As such, identifying each coconspirator statement made during and in furtherance of the conspiracy is unwarranted. Instead, the Court notes that "[a]ny statement discussing the supply source, identifying a coconspirator's role, indicating the quantity of drugs, or providing information on the enterprise's scope furthers the conspiracy." United States v. Sims, 999 F.3d 547, 552 (8th Cir. 2021). In addition, coconspirators' statements within those categories made to undercover officers who had covertly assumed the online identifies of other coconspirators remained in furtherance of the conspiracy. See United States v. Jimenez Recio, 537 U.S. 270, 275 (2003) (quotations marks and alteration omitted) ("A conspiracy does not automatically terminate simply because the Government, unbeknownst to some of the conspirators, has defeated the conspiracy's object"). Having carefully reviewed the record and the independent evidence at trial, the Court concludes that all statements made by coconspirators during and in furtherance of the conspiracy were properly admitted as nonhearsay.

**IT IS SO ORDERED**.

Dated this 18th day of April, 2023.

*/s/ Peter D. Welte*
Peter D. Welte, Chief Judge
United States District Court